## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

LINDA JEAN FITZGERALD,

       Plaintiff,

v.                           Case No:  2:13-cv-24-FtM-29CM

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

       Defendant.

---

### REPORT AND RECOMMENDATION[2]

      Plaintiff, Linda Jean Fitzgerald ("Plaintiff"), is appealing the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").  For the reasons set forth herein, the Court recommends that the Commissioner's decision be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  No further action need be taken to continue this suit pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14)** days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

I.   Issues on Appeal and Procedural History

There are three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") failed to properly follow the treating physician rule; (2) whether the ALJ failed to properly evaluate Plaintiff's credibility; and (3) whether the ALJ erred in failing to make a finding whether Plaintiff's obesity was a severe impairment or consider the impact her obesity had on her residual functional capacity ("RFC").  For the reasons stated herein, the undersigned recommends that the Court affirm the Commissioner's decision because the ALJ properly followed the treating physician rule and evaluated Plaintiff's subjective complaints of pain pursuant to the Eleventh Circuit pain standard.  Furthermore, Plaintiff did not claim that her weight or obesity were causes of her alleged disability in the documents she submitted with her disability applications, nor when she testified at the hearing; therefore, the ALJ was not required to consider them.

On July 30, 2009, Plaintiff applied for disability, DIB, and SSI benefits, alleging that she had been disabled and incapable of working since December 15, 2007, due to "breast cancer needing chemo therapy, hbp [high blood pressure], high cholesterol, depression, hypertensive cardiovascular disease, hypertension, other digestive disorders."  Tr. 19, 47-53, 67.  The Social Security Administration ("SSA") denied Plaintiff's applications initially (Tr. 40-43, 483-86) and upon reconsideration.  Tr. 44-45, 487-89.  Plaintiff requested and received a hearing before an ALJ, held on

July 14, 2011, during which she was represented by an attorney.[3]  Tr. 19, 522-37. Plaintiff testified at the hearing.  Tr. 525-36.

On July 27, 2011, the ALJ issued a decision finding Plaintiff not disabled from December 15, 2007, through the date of the decision.  Tr. 19-27.  Following the ALJ's decision, Plaintiff filed a Request for Review by the Appeals Council, which was denied on November 15, 2012.  Tr. 15, 8-10.  Accordingly, the ALJ's July 27, 2011 decision is the final decision of the Commissioner.  On January 15, 2013, Plaintiff timely filed her Complaint with this Court under 42 U.S.C. §§ 405(g), 1383(c)(3).  Doc. 1.  The parties have briefed the issues, and the matter is ripe for review.

## II.    Summary of the ALJ's Decision

The ALJ first determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.  Tr. 21.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 15, 2007, the alleged onset date.  *Id.*  At step two, the ALJ determined that Plaintiff had "the following severe impairments: status-post lumpectomy, breast cancer (in remission), sciatica, carpal tunnel, ulcers."  *Id.*  At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  Tr. 23.  In doing so, he explicitly considered the four broad functional

---

[3] The ALJ's opinion states that the Plaintiff was represented at the hearing by non-attorney representative, Christina Carrano.  Tr. 19.  But the official hearing transcript from the July 14, 2011 hearing shows that Plaintiff was represented at the hearing by Mr. Patel, an attorney, and the ALJ referred to Mr. Patel as an attorney at the hearing.  Tr. 522, 524. Thus, the reference to a non-attorney representative in the opinion seems to be an error.

areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (10 C.F.R. Part 404, Subpart P, Appendix 1).  Tr. 22-23.  These four broad functional areas are known as the "paragraph B" criteria.

The ALJ then determined that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), stating that the RFC assessment reflects the degree of limitation the ALJ has found in the "paragraph B" mental function analysis. [4]  Tr. 23-24.  Accordingly, at step four, the ALJ determined that Plaintiff was not able to return to her past relevant work as a sales associate or teacher's aide as the demands of that work as performed by the Plaintiff exceeded the RFC.  Tr. 26.  Finally, at step five, the ALJ applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, Appx. 2, to conclude that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 26.  Thus, the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from December 15, 2007, to the date of the decision.  Tr. 27.

---

[4] Light work is defined as that involving lifting no more than 20 pounds with frequent lifting of up to 10 pounds.  Light jobs also include those that require a good deal of walking, or seated jobs with some pushing and pulling of hand and foot controls.  20 C.F.R. §§ 404.1567(b), 416.967(b).

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) ("Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'").

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV.   Relevant Evidence

Plaintiff was 49 years old at the alleged onset date and 56 years old when the ALJ issued his decision. Tr. 16, 47. She has a high school education and had completed one year of college. Tr. 73. She lives with her husband and daughter. Tr. 48. Plaintiff had past relevant work experience as a sales associate, teacher's aide, and cashier. Tr. 26, 69, 525-26. She alleged that she could not work due to breast cancer, high blood pressure, high cholesterol, depression, hypertensive cardiovascular disease, hypertension, and digestive disorders; all of which caused her inability to stand, sit, walk, bend, reach, or interact with others for any length of time. Tr. 67-68.

Plaintiff initially suffered a work-related injury as a cashier on September 25, 2007, when a rat jumped up and scratched her arm while she was cleaning out a trash

can.  Tr. 132.  She stated that she was unable to hold any objects in her right extremity due to this injury.  *Id.*  Plaintiff then suffered another work-related injury on December 5, 2007, while working as a cashier when she burned her right arm over a hot coffee burner.  *Id.*  Plaintiff's alleged onset date is shortly thereafter – December 15, 2007.  Tr. 47.  The alleged onset date is prior to her diagnosis of breast cancer in 2008.  Tr. 455.

## V.   Analysis

On appeal, Plaintiff argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to properly follow the treating physician rule when considering the opinion of her treating oncologist, Dr. Eric Lubiner, D.O.; failed to properly evaluate the credibility of Plaintiff's subjective complaints; and failed to indicate if Plaintiff's obesity was a severe impairment or consider the impact her obesity had on her RFC.  For the reasons that follow, I find that the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A. The ALJ Properly Followed the Treating Physician Rule When Considering Dr. Lubiner's Opinion

In assessing Plaintiff's RFC, the ALJ considered the opinion of Dr. Lubiner and gave it no weight.  Tr. 24-25.  As noted by the ALJ, Dr. Lubiner opined in a Multiple Impairment Questionnaire ("Questionnaire") dated March 22, 2010, that Plaintiff had a good prognosis but that she continued to report pain in her right breast and now sciatica.  Tr. 25, 455-62.  Dr. Lubiner estimated that Plaintiff could sit for four hours in a day, stand and walk for one hour, and lift or carry no weight at all.  Tr. 25,

457-58.  Plaintiff argues that Dr. Lubiner's opinion should be given controlling weight because he was Plaintiff's treating oncologist, and that the ALJ did not provide a good reason why Dr. Lubiner's opinion was given no weight.  While Defendant acknowledges that Dr. Lubiner is a treating physician, Defendant argues that the ALJ properly gave no weight to Dr. Lubiner's opinion in the Questionnaire because it was not well supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with the other substantial evidence in the record.  I find that the ALJ properly considered Dr. Lubiner's opinion in accordance with the controlling law and regulations, and thus the ALJ's decision was supported by substantial evidence.

When an impairment does not meet or equal a listed impairment at Step 3, the ALJ will go on to Step 4 to assess and make a finding regarding the claimant's RFC based upon all the relevant medical and other evidence in the record.  20 C.F.R. § 404.1520(e).  In this case, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. 23.  Therefore, the ALJ proceeded to assess and make a finding regarding the claimant's RFC.  The RFC is the most that a claimant can do despite her limitations.  *See* 20 C.F.R. § 404.1545(a).  The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence and medical source statements.  *Id.*  At the hearing level, the ALJ has the responsibility of

assessing a claimant's RFC.  *See* 20 C.F.R. § 404.1546(c).  The determination of RFC is within the authority of the ALJ, and the claimant's age, education, and work experience is considered in determining the claimant's RFC and whether she can return to her past relevant work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).  The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).

Generally when determining a plaintiff's RFC, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown."  *Castle v. Colvin*, --- F. App'x ---, 2014 WL 595284 (11th Cir. Feb. 18, 2014) (citing *Phillips*, 357 F.3d at 1240); 20 C.F.R. § 404.1527(c)(2); *Lewis*, 125 F.3d at 1440; *Sabo v. Comm'r of Soc. Sec.*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).  "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1240).  Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.  *See* 20 C.F.R. § 404.1527(c), (c)(2)(i)-(ii), (c)(3)-(6); *Edwards*, 937 F.2d 580 (ALJ properly

discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements); *Lewis*, 125 F.3d at 1440.  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); Social Security Regulation ("SSR") 96-2p.

The ALJ is required to review all of the medical findings and other evidence that supports a medical source's statement that a claimant is disabled.  Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is "disabled" or "unable to work," "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p.  Thus, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(d)(1).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).

In this case, the ALJ correctly considered the opinion of Dr. Lubiner, and gave it no weight because it was not supported by his own and other medical treatment notes or the objective evidence as outlined in the ALJ's opinion.  Tr. 25-26.  Dr. Lubiner stated in the Questionnaire that Plaintiff's primary symptom was pain in the right breast.  Tr. 456.  However, he further wrote that Plaintiff "now complains of sciatica" and pain in the right hip radiating down her leg.  Tr. 456.  He mentioned that an MRI revealed small disc disease and that he would refer her to a back specialist.  Tr. 461.  He estimated Plaintiff's pain and fatigue each at a 7 on a 10-point scale, and opined that Plaintiff could sit for 4 hours in an 8-hour workday and stand/walk for 1 hour in an 8-hour workday.  Tr. 457.  But in response to the question, "Would it be necessary or medically recommended for your patient not to sit continuously in a work setting?" Dr. Lubiner checked "No."  Tr. 457.  He did not answer either the question, "How frequently must your patient get up and move around?" or "How long before your patient can sit again?"  Tr. 457-58.  In response to the question, "Would it be necessary or medically recommended for your patient not to stand/walk continuously in a work setting, Dr. Lubiner checked, "Yes."  Tr. 458.  Dr. Lubiner opined that Plaintiff could never lift any weight at all (Tr. 458), yet he also checked the form indicating that Plaintiff had no significant limitations in repetitive reaching, handling, fingering, or lifting.  Tr. 458.  He checked that Plaintiff had no limitations in grasping, turning, or twisting objects using the upper extremities, using her fingers/hands for fine manipulations, or using her arms for reaching, including overhead.  Tr. 458-59.  Dr. Lubiner checked the blank on the

Questionnaire indicating that Plaintiff was incapable of even "low stress" because she was "very emotional," with "lots of phone memos during 1 yr of tx."[5]  Tr. 460.  Dr. Lubiner stated Plaintiff would need to take unscheduled breaks to rest during a work day, and checked "4" in response to the question of how often this would happen, but did not indicate whether this meant four times in a work day, or every four hours. Tr. 460.  Dr. Lubiner did not answer the question of how long Plaintiff would have to rest before returning to work.  Tr. 460.  He wrote that Plaintiff's impairments were likely to produce "good days" and "bad days," and estimated that Plaintiff would have to be absent from work more than three times per month, was not prone to infections, and did not need a job that permitted ready access to a restroom.  Tr. 461.  Most notably, Dr. Lubiner stated that his opinion given in the Questionnaire applied only after March 1, 2010, and he did not believe Plaintiff's impairments were ongoing or that they would last at least twelve months.  Tr. 460-61.

As stated by the ALJ in his opinion, Dr. Lubiner opined that Plaintiff had a good prognosis but that she continued to report pain in her right breast and now sciatica. Tr. 25, 455-62.  The ALJ also acknowledged that Dr. Lubiner estimated that Plaintiff could sit for four hours in a day, stand and walk for one hour, and lift or carry no weight at all  (Tr. 25, 457-58), and that Plaintiff would require frequent breaks and would miss several days of work a month.  Tr. 25, 460. As to Dr. Lubiner's notation that an MRI revealed small disc disease in response to Plaintiff's complaint of sciatica (Tr. 25, 461), the ALJ stated: "Nowhere in the treatment notes are the

---

[5] "Tx" is a medical abbreviation for treatment.

foregoing limitations expressed but for the above opinion.  The opinion appears to be based primarily on claimant's subjective complaints of which there is ample evidence to discount as noted above."[6]  Tr. 25-26.

A treating physician's opinion will only be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and if it is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  As to whether the opinion was well supported, the ALJ found that Dr. Lubiner's opinion assessing restrictive limitations on Plaintiff's ability to work did not reference any medically acceptable clinical and laboratory diagnostic techniques, except for the MRI which, as the ALJ stated, "showed small herniated discs at L4-5 and L5-S1, but on the opposite side of that expected given Plaintiff's subjective complaints," and was not consistent with allegations of disabling limitations.  Tr. 22, 25-26, 453-54.  Nor did Dr. Lubiner support his opinion with reference to any clinical findings in his own treatment records.  As noted by the ALJ, other than in the Questionnaire, Dr. Lubiner's own medical treatment notes did not include any clinical findings that would support his restrictions on purported limitations in walking, sitting, standing, and lifting.  Tr. 25-26, 455-62.  When asked what clinical findings supported his diagnosis, Dr. Lubiner referred to her breast lumpectomy in June 2008, which simply referred to treatment from years past unrelated to any treatment regarding Plaintiff's alleged limitations

---

[6] The undersigned further finds that the ALJ's credibility finding was supported by substantial evidence, as discussed below.

in her ability to walk, sit, stand, or lift. Tr. 455. Rather than supporting his opinions with clinical and laboratory diagnostic techniques, Dr. Lubiner appeared to base his opinion primarily on Plaintiff's subjective complaints, as he refers to no treatment notes, referrals, or testing regarding the alleged limitations. This is not an acceptable basis for an opinion. Tr. 26, 455-62. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41. Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *Schnor*, 816 F.2d at 582; *Wheeler*, 784 F.2d at 1075.

Dr. Lubiner's opinion is also inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4). The ALJ recognized that Plaintiff had received extensive treatment for breast cancer beginning in 2008 from Dr. Lubiner, and in fact concluded that Plaintiff had the severe impairments of status-post lumpectomy, breast cancer (in remission), and sciatica, all of which Dr. Lubiner assessed in the Questionnaire. Tr. 21. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). However, the ALJ also mentioned that Dr. Lubiner was Plaintiff's oncologist (Tr. 25), who intended to refer Plaintiff to a "back specialist"; and his treatment notes did not indicate that he made any findings related to Plaintiff's "new complaints" of sciatica. Tr. 160-307, 461. Therefore, the record did not show that Dr. Lubiner treated Plaintiff for sciatica or that he conducted examinations or testing for sciatica. Therefore, his opinion regarding Plaintiff's

sciatica is not entitled to controlling weight under the regulations. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).

Further, the medical evidence as cited by the ALJ included the treatment records of Mary Shriver, D.O., whose physical examination showed that despite the small disc herniations shown by the MRI, there was normal motor testing in all extremities and the musculoskeletal exam was normal, with no back or muscular tenderness, and normal cervical, thoracic, and lumbar curvatures; and surgery was not required. Tr. 22, 477. Dr. Shriver stated that Plaintiff's radicular numbness and pain, as well has her lower back pain, would "certainly" be lessened if she lost weight. Tr. 477. The ALJ also considered that no prominent gait abnormalities or gross motor coordination problems were observed during the consultative examination with Claudia Zsigmond, Psy.D.; and the fact that the record did not contain any observations of difficulty walking or standing upon examination. Tr. 22, 25, 435-38. Additionally, the record contained little evidence of treatment for sciatica that would have caused the significant limitations assessed by Dr. Lubiner. Tr. 25. Moreover, on October 20, 2009, Srinivas Raju, M.D., did not assess the same extreme work-related limitations as Dr. Lubiner. Tr. 25, 429-32. Dr. Raju assessed that Plaintiff had chronic diarrhea due to lactose intolerance and that she was capable of low stress work, could sit for two hours a day, stand or walk for four hours a day, but that her condition was treatable with simple modifications to Plaintiff's diet, of which Plaintiff was at that time non-compliant. Tr. 25, 429-34.

When a treating physician's opinion is not given controlling weight, good cause must be shown as to why.  In this case, I find that the ALJ had good cause to discount Dr. Lubiner's opinion and not give it controlling weight when he found that the doctor's opinion as expressed in the Questionnaire was not bolstered by the evidence, was conclusory or inconsistent with the medical records, and made no reference to any clinical or laboratory diagnostic techniques to support his opinion.  *See Winschel*, 631 F.3d at 1179.  Further, other evidence in the record supports a contrary finding to Dr. Lubiner's opinion.  Because the ALJ articulated his reason for discounting Dr. Lubiner's opinion contained in the Questionnaire, he properly applied the treating physician rule.

### B.  The ALJ Properly Evaluated the Credibility of Plaintiff's Subjective Complaints

Plaintiff further argues that the ALJ did not properly evaluate the credibility of her subjective complaints of disabling symptoms.  Defendant responds that this argument lacks merit because the ALJ properly applied the pain standard as recognized by the Eleventh Circuit and found that Plaintiff's subjective complaints were not entirely credible.  The Court finds that the ALJ properly applied the pain standard when rejecting Plaintiff's subjective testimony and his determination is supported by substantial evidence.

Once the ALJ identifies an underlying impairment that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which they affect the claimant's capacity for work.  20 C.F.R. §§

404.1529(c)(1), 416.929(c)(1).  In doing so, whenever the statements concerning the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the claimant's statements based on a consideration of the entire case record.  20 C.F.R. § 404.1529.  The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1529(c)(4).

In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, Plaintiff must satisfy two parts of the Eleventh Circuit's three-part test showing: "(1) evidence of an underlying medical condition; and (2) either: (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); 20 C.F.R. §§ 404.1529(a), 416.929(a).  In *Wilson*, the Eleventh Circuit stated that the ALJ in that case had cited 20 C.F.R. § 404.1529 in his findings and discussion, "which contains the same language regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard."  *Wilson*, 284 F.3d at 1226-25.

Pursuant to SSR 96-7p: "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific

reasons for the weight given to the individual's statements." It is within the province of the ALJ to decide questions of credibility. *See Foote*, 67 F.3d at 1562. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Jones v. Dept. of Health and Human Serv.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Foote*, 67 F.3d at 1562.

As an initial matter, the Plaintiff argues that the ALJ applied the incorrect legal standard because certain language in the opinion suggests that the ALJ determined Plaintiff's RFC first before evaluating her subjective statements and then compared Plaintiff's subjective complaints with an RFC that was unsupported by substantial evidence in the record, rather than to the medical evidence as required. In support of his argument, Plaintiff cites to the Seventh Circuit's decision, *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012) (criticizing the credibility language for indicating a "backwards" approach in that the ALJ completed the RFC assessment before making a credibility determination). Another court in the Middle District of Florida, however, recently considered the same issue and concluded that *Bjornson* was not consistent with Eleventh Circuit case law. *See Karboski v. Colvin*, 8:12-cv-2033-T-33EAJ, 2013 WL 3766598, at *9 n.16 (M.D. Fla. July 16, 2013) (citing *Dyer*, 395 F.3d at 1210) (citation and internal quotation marks omitted) (finding that an

ALJ is not required to use "particular phrases or formulations" in making a credibility determination)). *Karboski* also stated that "even the Seventh Circuit has found the use of boilerplate language harmless when 'the ALJ has otherwise explained his conclusion adequately.'" *Id.* (quoting *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)).

In this case, the statement summarizing the ALJ's credibility finding, even though placed after the RFC determination in his opinion, makes clear that he did not find Plaintiff's testimony incredible after assessing the RFC or because the testimony was inconsistent with the RFC finding.   Rather, the ALJ evaluated Plaintiff's testimony to the extent that it was inconsistent with the RFC. Tr. 24-25. The ALJ set forth the RFC in Finding No. 5 and immediately after this stated: "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of and 416.929 and SSRs 96-4p and 96-7p." Tr. 24.  Thus, the ALJ applied the proper legal standard set forth in 20 C.F.R. § 404.1529 in evaluating Plaintiff's credibility to determine if Plaintiff is disabled.

The Court finds that the ALJ properly evaluated Plaintiff's credibility.   He determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. Tr. 25. In doing so – as the ALJ correctly did in *Wilson*

– the ALJ cited 20 C.F.R. § 404.1529, and SSR-06-7p.  Tr. 24.  The ALJ then articulated specific reasons for his credibility determination, finding that Plaintiff's subjective complaints were not consistent with the objective medical evidence.  Tr. 24-25.

Specifically, the ALJ considered Plaintiff's testimony that she became disabled after she was diagnosed with breast cancer.  Tr. 526-27.  Though Plaintiff has had no recurrence of breast cancer, she testified that her treatment has had psychological effects and that she is depressed, anxious, angry, moody, and has crying spells daily.  Tr. 527-28.  Plaintiff also claims she has back pain and difficulty standing because she gets shooting pains.  Tr. 528.  She further claims she has trouble sitting for long periods of time and difficulty bending over, (Tr. 528-29) and describes trouble with chest pain, palpitations, and shortness of breath.  Tr. 531.  She also states that she has some sciatica and swelling in her legs, which prevent her from standing when it acts up, and carpal tunnel in her right hand, which makes it difficult for her to grasp.  Tr. 532-33.  Plaintiff testified that she cannot do many chores and relies on her husband and daughter.  Tr. 529-30.  She also testified that she no longer cooks because she almost sat the house on fire twice.  Tr. 530.

The ALJ noted that Plaintiff's medical records showed that her breast cancer was in remission, with no evidence of a recurrence.  Tr. 25, 527.  He determined that Plaintiff's complaints of sciatica, back pain, lower extremity weakness, and carpal tunnel syndrome were inconsistent with the objective medical evidence, including x-ray images and nerve conduction studies on the arms and wrists, MRI images that

were inconsistent with what would be expected given the complaints, and the lack of observed difficulty in walking and standing upon examination.  Tr. 25, 128, 152, 453-54.  It also appeared from the record that Plaintiff's complaints of shortness of breath and chest pains had resolved, since Plaintiff had not reported those symptoms in the recent past and objective testing had shown a high ejection fraction and no sign of pulmonary embolism.  Tr. 25, 186-87, 196, 204, 216, 317-18, 321.

In addition, the ALJ determined that Plaintiff had limited medical treatment for her sciatica, back pain, lower extremity weakness and carpal tunnel syndrome and that her conditions were managed by such treatment.  Tr. 25.  "A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." *Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)); *Dyer*, 395 F.3d at 1210 ("The ALJ discredited [claimant's subjective complaints of pain] by explaining that this pain had not require[d] routine or consistent treatment, and [the claimant] often went for months or years between complaining of this pain to his physicians.").  Further, Plaintiff's complaints of abdominal pain and gastrointestinal issues were related to lactose intolerance, according to her medical records; and when she was compliant with her diet recommendations, her gastrointestinal symptoms were alleviated.  Tr. 25, 409-14, 530-31.

In this case, in rejecting Plaintiff's subjective testimony, the ALJ articulated, in detail, the contrary evidence as his reasons for doing so.  Thus, I find that the ALJ

clearly articulated his credibility findings with record evidence, and his findings should not be disturbed.

### C. The ALJ Did Not Err In Failing to Make a Finding As to Whether Plaintiff's Obesity Was a Severe Impairment or Consider the Impact Her Obesity had on her RFC

Plaintiff next argues that the ALJ failed to indicate if Plaintiff's obesity was a severe impairment or consider the impact her obesity had on her RFC or other impairments, in accordance with SSR 02-1p. Defendant responds that the argument lacks merit because Plaintiff never alleged that her weight affected her ability to work nor that she had a severe impairment due to her weight that affected her ability to work beyond the limitations found by the ALJ. The Court agrees with the Commissioner.

SSR 02-1p explains that "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat. Obesity is generally the result of a combination of factors (*e.g.*, genetic, environmental, and behavioral)." SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002). Further, "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* The ALJ should "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.* A person with a BMI greater than 30 is considered obese, and a BMI equal to or greater than 40 falls into the category of "extreme obesity," which means the

individual is at greatest risk for developing obesity-related complications.[7]  SSR 02-1p.  Plaintiff's records reflect that Plaintiff weighs between 197 and 237 pounds, is 64 inches tall and has a BMI ranging between 33.8 and 40.7.  Tr. 387, 476.  At the hearing Plaintiff testified that she is 5'4" tall and her weight was 199.  Tr. 534.

When a plaintiff fails to allege disability due to a specific condition on their application or at hearing, the ALJ has no duty to consider and make findings regarding that condition.  *Robinson v. Astrue*, 365 F. App'x 993, 995-96 (11th Cir. 2010) (because plaintiff failed to allege her chronic fatigue syndrome on her application or during her hearing, ALJ was not required to consider the condition) *Street v. Barnhart*, 133 F. App'x 621 627 (11th Cir. 2005) (ALJ did not err in failing to consider claimant's mental impairment and intellectual functioning because they were not listed on his application and the condition was not testified to at the hearing even though plaintiff was represented by an attorney).

Here, Plaintiff never alleged that her weight affected her ability to work.  In the documents she submitted with her disability applications, Plaintiff did not claim that her weight or obesity was a cause of her alleged disability.[8]  Tr. 67-68.  At the administrative hearing, Plaintiff testified "for the record" about how much she weighed (Tr. 534), which was at the low end of the weight she cites in her Brief, along with assertions about bariatric surgery and extreme obesity levels.  Nonetheless,

---

[7] SSR 02-1p explains: "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2)."

[8] As noted, Plaintiff alleges she is disabled because of "breast cancer needing chemo therapy, hpb, high cholesterol, depression, hypertensive cardiovascular disease, hypertension, other digestive disorders."  Tr. 67.

neither Plaintiff nor her attorney who represented her at the hearing otherwise mentioned her weight or obesity during the hearing, and Plaintiff did not claim either as a basis for her alleged inability to work in her applications. "[A]n administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Street*, 133 F. App'x at 627 (internal quotations omitted) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)).

In any case, Plaintiff does not specifically explain how her obesity impacts her ability to work or point to medical evidence showing an effect on her work-related abilities. Instead, Plaintiff maintains that her BMI of 40 alone is evidence that her obesity impacts her functionality. But while BMI levels "describe the extent of obesity," they "do not correlate with any specific degree of functional loss." SSR 02-1p.

Further, the ALJ found in Plaintiff's favor at step two of the sequential evaluation process by finding that she had severe impairments. Tr. 21. The ALJ then proceeded with the other steps of the sequential evaluation process and found Plaintiff could perform the full range of light work. Tr. 25-26. As the Eleventh Circuit has stated, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). The ALJ found that Plaintiff did not have an "impairment or combination of impairments" that met or equaled a listed impairment, which is sufficient to show that the ALJ considered the combined effect

of all Plaintiff's impairments.  Tr. 23.  *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011); *Wilson*, 284 F.3d at 1224-25.

## VI.  Conclusion

Accordingly, for the reasons stated in this Report and Recommendation, it is hereby respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

**DONE** and **ORDERED** in Fort Myers, Florida on this 6th day of March, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:

The Honorable John E. Steele
Counsel of record